Good morning. Benjamin Silverman for Aaron Etra and thank you for hearing from us. There is a lot of evidence that leads people to think that Aaron Etra stole $4.6 million. His adversary in the district court want to know where it is. He's been referred to the United States Attorney's Office and what's going to happen to him is going to happen. But what cannot happen is he cannot be compelled to build the case through his own testimony. There are here interrogatories and a fine and I'll start with the interrogatories. Has anything happened in the case since the end of August in the district court? Not related to the issues under appeal. There's an issue that's not under appeal which is an ongoing forensic search of Mr. Etra's laptop. He was in court yesterday about that. Okay, that's part of, they're looking at his laptop now. Yes, your honor. Does that mean he's provided the password? I don't have the transcript from yesterday, but my understanding is that they're in the laptop. They've searched the laptop. They have the contents. There's a privilege review. There are search terms that have been applied and an order docketed yesterday. The district court noted certain email addresses of people who he corresponded with based on the contents of the laptop. So there's a forensic search going on of the laptop and another hard drive that was also in his CJA counsel's possession disclosed at the order of the court in December of last year. So that is ongoing. But nothing has- Has he produced more documents? No, your honor. No. So, and I- Does that include the, I'm just trying to make sure I understand the record. He was asked or instructed that he could produce credit reports from TransUnion, Equifax, the other credit company, reflecting, and that they would reflect past and current accounts. Has he done that? No, your honor, and that's with respect to the fine. And I think that's a very interesting point because he's in jail. He doesn't have those. There's no evidence he has those in his possession. He doesn't have them. And so this is now a fine, I guess, being used to coerce a civil litigant to obtain documents not in his possession, custody, and control. I'm not aware of anything under the civil discovery laws that makes someone responsible for producing that. That could be the only purpose of the fine now. It's established that he owes $130,000 to the IRS, over $10,000 to his landlord. He's produced significant bank records showing basically that he beneficially owns nothing. I thought the idea behind the counsel had requested, what could we do to establish that we're unable to pay the fine? And that was in the guise, something of a suggestion by the district court. You could do this. I'm just asking whether he'd done that. Yeah, no, he has not, your honor, and I don't think he can be compelled to do that. What I think is really going- Would he sign a release for the credit reports? Would he sign a release for- In other words, he authorizes the credit companies to release the reports. In other words, even though he doesn't have them, he could sign a release. I'm not aware, your honor, of anything that requires him to, that he can be held in contempt for not producing documents he doesn't have. He certainly thinks it could be subpoenaed. I'm sorry, Judge. Judge Park. Just following up on Chin's question, you said possession, custody, or control. And he certainly still continues to have control over the release of documents or information relating to documents, and there seems to be a dialogue going on about what he will and will not produce, and whether that would infringe on his Fifth Amendment rights. Yes, your honor. So two points. First, with respect to, well, yes, so I think that's really the crux of the issue. There are a lot of documents the district court wants that may or may not weigh on what assets he has, and he's asserted the Fifth Amendment asks those documents. And the context for that is that he complied with about half the interrogatories in the district court's December 20th order at SA1, and also at SA38, the July 5th order. But about half of them, four out of five of which the district court acknowledges require testimonial responses. He has said that he can't answer those or provide that information because it might incriminate him. And the only question as to the validity- When was that, just in terms of timeline? So he asserted the Fifth Amendment shortly after I was appointed in the early part of this year. And Dan McGinnis was appointed to represent him in the district court. And I think the timeline is very important because although the district court did not find that he waived the Fifth Amendment assertions, it said it was skeptical based on the timeline and cited this court's 1995 decision in the United States versus, it's a forfeiture case. But the difference is that here, he was pro se for the vast majority of this time. Judge Nathan never, it looks like, never contemplated putting him in jail, and so he never had a lawyer. He did at one point raise privileges, but he didn't articulate it well. And then after he gets counsel appointed, two things happen. One, he complies with half or a little over half of the things he has to do under the contempt order. And he also asserts the Fifth Amendment. The things he asserts the Fifth Amendment to are testimonial. And it's manifestly obvious why he thinks that they might incriminate him, given that the district court has said that he stole 4.6 million- One of the requests, and correct me if I'm misunderstanding the record, but one of the document requests is communications related to his finances and the judgment that the effort is being made to enforce for a given period of time, couple of 2018 to maybe today, right? Yes, Your Honor. It's a fairly broad documentary request. It is his claim that every one of those documents, false to produce it, would violate his Fifth Amendment act of production privilege. His claim is that using the contents of his mind to identify these documents that the district court doesn't know about. Given that moving $4.6 million in stolen funds is itself money laundering and communications about his finances would therefore, based on the district court's view of the case, be communications about money laundering, that using the contents of his mind to identify these communications would be testimonial, and that he can't do that. And you're relying principally on the Hubble case. Yes, Your Honor. I mean, that was in the context of a person who had already pled guilty to charges, in a clear context where the prosecutor was considering additional charges. So the context, the need for an assertion of the Fifth Amendment privilege may have been obvious or conceded even in that case. I'm wondering why you think it improper for the district court to say, I'm perfectly willing to entertain. I'm already saying you don't have to comply with some of these requests. With regard to others, perfectly willing to entertain in-camera submission to help me understand why this is a valid assertion of the privilege. Your Honor, I think that's really the crux of the issue, and I think the problem is twofold. First, under this court's decisions in the state v. Fisher and under Edgington, when it's clear on the face, or when it's readily apparent why the privilege is asserted, the person doesn't need to say more because it would turn the Fifth Amendment on its head. And so while you don't have an active indictment, he's the equivalent of the target of a grand jury investigation. There's circumstantial evidence that he is actually the target of a grand jury investigation. A federal judge has said that he's a thief at least twice on the record. Another magistrate judge recommended criminal investigation. His adversary calls him in court documents a career criminal and a scoundrel. So even though he's not technically under indictment yet, his reasons for being concerned about criminal prosecution are very clear. If he's criminally prosecuted, you know, he's criminally prosecuted. The issue is whether he has to say things now that would materially build that prosecution. Under Maranti and under Hoffman, it doesn't have to be just a straight confession, right? It can be anything that helps build the case. And in terms of the immunity point, I think that's a very interesting, complicated question that this court should not get to. And the reason I say that is because if you look at the two examples I'm aware of, where someone is forced to speak who doesn't want to speak, which are, that I know of, 18 U.S.C. 6002 and Federal Rule of Criminal Procedure 12.2C4. Both of those offer robust use and derivative use immunity. The district court talked about Simmons immunity, which is one, a factually different circumstance. Because under Simmons, or under the Third Circuit case that the district court cites, where the person wants appointment of counsel. Yes, Judge Tenney? Does he have documents now that he refuses to produce because of the fifth? Or does he not have any documents? Or I guess another possibility is he could identify documents, but he doesn't want to because he thinks it would jeopardize him. Just trying to figure out exactly what he's thinking here. The answer is both, because there are five interrogatories. Four call for identifying documents, identifying them one way or the other. The fifth, which is escrow accounts for his 41 identified clients. At SA 67 to 68, the district court says, well, he said under oath that they were destroyed. And the district court says, she doesn't believe that. And the option that she gives him is to produce credible admissible evidence that they were destroyed, or to admit that he lied under oath. So he either has to admit to perjury or dig his hole deeper. The only thing he can do there is to remain silent, and it's readily apparent why he would remain silent. So in that circumstance, the district court does think that there are documents that he's not producing. But the other four categories, like all of your judgment related communications about moving the money that the district court said is stolen, which is to say violations of 18 U.S.C. 1956-57, or all of your bank accounts for someone who has a huge number of bank accounts, through which money keeps moving this way or that, and being asked to identify those. Because for the ones that were a foregone conclusion, that were listed, the specific accounts, those obligations have been satisfied. He's not bringing to this court a Fifth Amendment claim with respect to those foregone conclusion bank accounts. Yes, Your Honor. The point of civil contempt is to coerce. Yes, Your Honor. Are we at the point where he is absolutely refusing to do anything more, or he's done everything? I'm still trying to figure out exactly what his position is. because one of the things that we look at in civil contempt is, at some point, it's clear that it's not going to work in terms of the coercive effect. I do think that's exactly where you are. And I think one of the proof- Since when? Because it seems like since counsel got involved and since he started invoking the Fifth Amendment, there has still continued to be some category by category back and forth over information and documents. And I'm wondering, for the timeline, when was the last time some information or documents were provided? And when, in your view, was an impasse reached? Yes, Judge Park. So over the summer, at docket entries 347, 348, and I believe 357, there were significant declarations by his counsel, his attorney, in fact. And then there was a motion for his release. In terms of the things he's compelled to do to get out of jail, that was the last. So it's been months. And I think that's exactly the point, Judge Chen and Judge Park, because if you look at pages 8 and 10 of our brief, we quote district court filings by Benthos, the petitioner. I'm sorry, making sure I understand. I said August, that's the August 29th findings when the court lists some of the outstanding items. Yes, Your Honor. That's the moment you think there was an impasse, but he did, it sounds like he's produced the passwords since then. As far as I'm aware, he wasn't in jail. He wasn't held in jail to produce the passwords. That those aren't listed in the orders at A19 to A123. As things he has to do to get out of jail. There are all sorts of obligations he's complying with that he's not being kept in jail to force him to comply with. And I think it's important. Benthos said extensively in writing, and we quote this at page 8 and 10 of our brief. We need to put you in jail so that you'll give us money. If we get you in jail for a long time, we'll coerce you to give us money. I'm not exaggerating. We quote this in the brief. They're not here today because they don't think it's worth their time. If they thought that there would be any coercive benefit to their client, they would be here today to defend the judgment, but they're not. And I think that's a very- I'd like to ask you, the appeal was brought in September 18th, but you didn't immediately notify us about the 1826, the 30 day provision. And I was wondering why that was. And then the other question I had is the court invoked section 401, not 1826. And does that make any difference here? So, Your Honor, can I answer those in reverse? So there is, as I understand it, and we didn't brief this topic, so I'd have to go back and look. Under the Rossin case, it's a 1982 case by this court. It says that 1826 is a codification of the traditional, I suppose it's an equitable or common law power of civil contempt. That's my understanding, but we haven't briefed that issue. In terms of the timing, this is the issue on timing. And we laid this out in our motion that was filed on October 9th in my declaration at docket 26-2 and repeated again in the motion filed earlier this week. And we appreciate the court's attention because we didn't file that as an emergency motion after the first one was denied. But we really appreciate. The answer is, one, under the First Circuit case that we cite, our understanding is that it's really 30 days from when you get the record from the district court. It's not practical. I would not be responsible for me to put together a brief and appendix without the transcript from the August 29th conference. This court had informed me via e-voucher that I could not request expedited transcripts in this court of appeal. So I had to wait to get it from district court counsel. I put together the appellant's brief very, very quickly after getting that transcript within days. And I notified the, I don't remember the exact date that I notified the clerk. It was in late September. It was before October. And then when I filed the notice, I didn't ask for 30 days from September 18th. I asked for 30 days from the time that the notice was in writing to the court, which under the First Circuit's precedent, and I think implicit in this court's precedent, is allowed because it's not jurisdictional, it's just tight. And so, yes, your honor, we do think that, look, there's a lot of facts here. I don't think the law is very much in dispute, except for the immunity issue, which we think the district court was just wrong on. And I say that respectfully, but we do, we think it was mistaken, but we don't think the court needs to get there. But we understand there's a lot to go through here. We do think that under that statute, that if the court wants to take time, that Mr. Etcher should be allowed out of jail to go to doctors and see his family for Thanksgiving. I also ask, is he now represented in connection with gathering documents, complying to the extent that he believes he's able to with the Fifth Amendment? Yeah, Judge Livingston, so in the district court, he only has counsel in terms of the issues that keep him under incarceration. There's one order that suggests he may also have counsel to raise his active production claim as to the laptop that's being searched, and it's active. And there was an order docketed yesterday that I read as saying it's actively, it's been searched as I understand it. Just from reading the record. I'm still, I don't have the transcript from yesterday though. He, in terms of everything else other than the legal challenges and the issues of detention, he's unrepresented below. So he was entirely pro se, save for two afternoons. He was entirely pro se until December 14th, 2022, and he still largely acts pro se. And in fact, one of the things that his district court CJA counsel does is take four links, emails from the prison, copy and paste them onto a letterhead, and deliver them to the court just as a courtesy to his incarcerated client. But he's being used more as a post box. And the district court has been very clear that there's a limitation, that this is a civil dispute. It's a dispute over money, and she's not giving him a lawyer to deal with the majority of the case. Yes, Judge. If we're helping him comply with the production, we might get him out of jail. I'm sorry? If counsel were to help him comply with the production, which is arguably civil, but that also helps him get out of jail, and so I would think it would be covered by the appointment. In the docket entries at 347, 348, I think it's clear that his district court counsel has gone above and beyond to try to help, and where we are now is that it's not an issue of he's not able to get these things. It's an issue of, is he going to use the contents of his mind to identify certain things? And then the fifth category, the escrow agreements, is he going to admit that he lied under oath when he said that he doesn't have them? Or is he, based on the district court's finding, going to dig his hole deeper? And I think that that's the issue where he finds himself. It's not an issue of difficulty complying. I was going to put it- So the escrow agreement, the Fifth Amendment argument, is that if you produce them, that would be an admission that he lied earlier in saying he didn't have them? Is that the- And he said it under oath, and he's been referred for investigation to the US Attorney's Office. If they're going to build a case against him, they should do it, but they can't contribute. Even if it's established already, you can't order him to contribute to the evidence of his guilt through his own testimony. It's not, and at 867, 868, that's exactly what's happening. I have a lot, I wouldn't say this about, I mean, I wouldn't say this about every judge, but I have a lot of respect for this district court. But I think it's fair to say that she really doesn't like Aaron Etra and thinks he belongs in jail. But the problem is that if he's indicted, you get a lot more trappings of due process. You can make a bail argument, you have to be convicted, there's a sentencing, right? Indefinite civil commitment is an extraordinary sanction, it's an extraordinary power. And so Judge Chin and Judge Park, what you were asking about, is he being compelled anymore at this point? He's not, because on the five categories of outstanding interrogatories and document demands, he just can't answer them. These are testimonial responses, and it's clear why they might incriminate him. And that, I'm sorry, SA 106, the district court says he's in jail because he hasn't produced the documents. That's after pages of conversations with the district court CJA lawyer about how he owes so much money he really can't pay a fine. And the district court says, well, he's in jail because he hasn't produced the documents. There's really not a lot of serious argument that he has ability to pay a fine. The IRS is owed $130,000 or more, more than $130,000 first, his landlord, he's going to be out on the street. And so we don't have debtor's prisons in this country. At that point, the civil contempt sanction becomes purely punitive. And so I do think that that's the proper jurisdiction under CFTC versus Armstrong. I also note that in terms of habeas petitions, the district court denied him. And he's 82, and I could say he's an officer of the court. This guy is frail. She denied him CJA counsel to pursue a habeas petition. You know, as a procedural matter, that would be a very drawn out process in any event. But when he can't be forced anymore, which is exactly where he is, because all that's left is money that he doesn't have. And documents that he cannot be compelled to identify, because there are very clear and readily apparent reasons why he believes that they would incriminate him. I didn't come here today to say that I defend everything that he's done, but at this point in jail for 11 months, he did not appeal the first contempt ruling on December 20th. Did not immediately appeal the July 5th ruling, which he disagreed with in part. He complied with a little more than half of those obligations. So it's not one of these cases where you have someone who's entirely recalcitrant. The issues that he's not complying with anymore are the issues that largely the district court concedes are testimonial. So I won't belabor these points unless the court has any other questions. We thank you for his time. Thank you, we'll take the matter under advisement.